**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DIGITAL DESIGN CORPORATION, and ADVANCED NETWORK DEVICES, INC. | |
| Plaintiffs, | |
| v. | Case No. 1:14-cv-03729 |
| ATLAS SOUND, LP, and MITEK CORPORATION | Jury Demand |
| Defendants. | |

**<u>COMPLAINT</u>**

Plaintiffs, Digital Design Corporation ("DDC") and Advanced Network Devices, Inc. ("AND") (collectively "Plaintiffs"), for their Complaint against Defendants, Atlas Sound, LP ("Atlas Sound") and MiTek Corporation ("MiTek"), state as follows:

**NATURE OF ACTION**

This is an action for an injunction, damages, and other relief stemming from: (a) Atlas Sound's and MiTek's circumvention of DDC's technological measures used to protect its works protected under Title 17, pursuant to 17 U.S.C. § 1201(a); (b) Atlas Sound's and MiTek's unfair competition and trademark infringement, under the Lanham Act, 15 U.S.C. § 1125(a); (c) Atlas Sound's and MiTek's misappropriation of DDC's confidential and trade secret information, under the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.*; (d) Atlas Sound's breach of contracts between DDC and Atlas Sound; and (e) Atlas Sound's and MiTek's unjust enrichment.

**PARTIES**

1.      DDC is a corporation organized and existing under the laws of the state of Illinois, and has its principal place of business at 3820 North Ventura Drive, Arlington Heights, Illinois.

2.      AND is a corporation organized and existing under the laws of the state of Illinois, is a wholly-owned subsidiary of DDC, and has its principal place of business at 3820 North Ventura Drive, Arlington Heights, Illinois.

3.      MiTek is a corporation organized and existing under the laws of the State of Illinois, and has its principal place of business at 1 Mitek Plaza, Winslow, Illinois.

4.      Atlas Sound is a limited partnership organized and existing under the laws of the State of Texas, and has its principal place of business at 4545 E. Baseline Road, Phoenix, Arizona.

**JURISDICTION AND VENUE**

5.      This Court has exclusive jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1338 and 1367.

6.      This Court has personal jurisdiction over MiTek in that MiTek: (a) has committed the acts complained of herein this district; (b) transacts business within this district; (c) is a corporation organized and existing under the laws of the State of Illinois; and (d) maintains its principal place of business within the State of Illinois.

7.      This Court has personal jurisdiction over Atlas Sound in that Atlas Sound: (a) has committed the acts complained of herein this district; and (b) transacts business within this district.

8.      Venue is proper within this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c) in that a substantial part of the facts giving rise to the claims asserted herein occurred in this

district, and MiTek and Atlas Sound are subject to the Court's personal jurisdiction with respect to the acts complained of herein

## BACKGROUND

9.      DDC is an electronics design and consulting firm, which designs and develops custom electronic products in a wide variety of applications for a wide variety of customers. DDC also manufactures proprietary products for customers, itself, and its wholly-owned subsidiary, AND, and oversees complete concept-to-production services.

10.     DDC architects, designs and implements integrated computers systems, including integrated circuits (a/k/a chips), and associated boards and software.  DDC provides its best-in-class digital design services to a wide array of industries, including military, medical, industrial and automotive.  DDC also provides consulting services specializing in video image processing, communications (networking, telecom, cellular, satellite, etc.), digital signal processing, audio, interfaces, etc., especially as they apply to digital implementations.

11.     DDC architects, designs, and implements mass-notification systems, which includes Internet Protocol (IP) Public Address hardware and software. The hardware and software is comprised of speakers, displays, clocks, zone controllers, and application software.

12.     DDC is also a designer and provider of Voice over IP (VoIP) technology solutions and products in the form of completely produced products and, in some instances, licensing use of underlying technology for a third party to produce the end product.  This includes IP speaker and audio device architecture, associated circuit board design, associated FPGA firmware ("Firmware"), associated embedded software ("FPGA Software"), bill of materials, board Gerbers, FPGA programming file and embedded bootloader ("Bootloader"), associated documentation and instructions, and associated IP device test applications and procedures (collectively "DDC Embedded Technology").

13.     AND is a wholly-owned subsidiary of DDC, and designs, manufactures, sells and offers for sale, IP speakers.

14.     On or about April 6, 2006, Atlas Sound and DDC entered into a Confidentiality Agreement, wherein DDC agreed to disclose to Atlas Sound certain DDC proprietary and confidential information, including the DDC Embedded Technology, so that Atlas Sound could manufacture, sell, and offer for sale, IP speaker products with certain software licensed to Atlas Sound by Berbee Software.  (the "2006 Agreement" (a true and correct copy of the 2006 Agreement is attached as Exh. A)).

15.      In the 2006 Agreement, Atlas Sound agreed that it would maintain the confidentiality of DDC's proprietary and confidential information, including the DDC Embedded Technology, would not disclose DDC's proprietary and confidential to any third party, and would not permit any third party under Atlas's direction and control, "to reverse assemble, reverse compile, or otherwise reverse engineer" any of DDC's proprietary and confidential information and technology. (2006 Agreement, Section 1).

16.     In 2009, Singlewire Software acquired the assets of Berbee Software.

17.     On or about October 1, 2010, DDC and Atlas Sound entered into another contract where DDC agreed to disclose and license to Atlas Sound DDC's confidential and proprietary DDC Embedded Technology, so that Atlas Sound could use the DDC Embedded Technology to manufacturer, sell, and offer to sell, IP speaker products with certain interoperable software from Singlewire Software, LLC. (the "2010 Agreement" (a true and correct copy of the 2010 Agreement is attached as Exh. B)).

18.     On or about March 25, 2011, DDC and Atlas Sound entered into another contract where DDC agreed to disclose and license to Atlas Sound DDC's confidential and proprietary

DDC Embedded Technology, so that Atlas Sound could use the DDC Embedded Technology to manufacturer, sell, and offer to sell, IP speaker products with certain interoperable software from Syn-Apps, LLC. (the "2011 Agreement" (a true and correct copy of the 2011 Agreement is attached as Exh. C)).

19.     Pursuant to the 2010 and 2011 Agreements, DDC licensed and provided to Atlas Sound the Firmware, FPGA Software and Bootloader, used with the DDC Embedded Technology in the Atlas Sound branded version of IP speaker products, in a binary and encrypted format, so that DDC could control, maintain and ensure a proper accounting of the use of the DDC Embedded Technology in the Atlas Sound branded IP speaker products so Atlas Sound could not misuse the DDC Embedded Technology.

20.     Pursuant to the 2010 and 2011 Agreements, DDC agreed to sell, and Atlas Sound agreed to purchase, certain computer chips ("DDC Enabling Chips") that were intended to be used by Atlas Sound with all IP speaker products manufactured and sold by Atlas Sound that incorporate the DDC Embedded Technology, wherein the DDC Enabling Chips would decrypt and unlock the Firmware, FPGA Software, and Bootloader for use in the Atlas Sound branded version of IP speaker products. (2010 and 2011 Agreements, Sec. 2).

21.     Use of the DDC Enabling Chips with the DDC Embedded Technology decrypted and unlocked the Firmware, FPGA Software and Bootloader with a proprietary and unique encryption protocol contained on the DDC Enabling Chips, which included, in part, DDC's proprietary rolling code technology and algorithms that require the periodic detection of the inclusion of a DDC Enabling Chip with the IP speaker products for proper operation.

22.     Without the presence of a DDC Enabling Chip with the DDC Embedded Technology, including the Firmware, FPGA Software, and Bootloader, in the IP speaker

products, it was DDC's intent that the Firmware, FPGA Software, and Bootloader would remain in a locked and encrypted state, and the IP speaker would not function. (See e.g., 2010 and 2011 Agreements "WHEREAS, DDC is the exclusive provider of electronic computer chips "<u>Chips</u>" that are enabling device to the DDC Embedded Technology.") (emphasis in original).

23.     Pursuant to the 2010 and 2011 Agreements Atlas Sound agreed to "hold in the strictest confidence any and all Confidential Information disclosed by one party to the other under the terms of this Agreement and shall use such information solely for the purpose of this Agreement. '<u>Confidential Information</u>' shall mean DDC Embedded Technology and associated details…" (2010 Agreement, ¶ 4; 2011 Agreement, ¶ 3) (emphasis in original).

24.     On August 28, 2013, DDC provided notice to Atlas Sound that DDC was terminating each of the 2010 and 2011 Agreements, effective September 30, 2013 and September 27, 2013, respectively, pursuant to Paragraphs 1.a of the 2010 and 2011 Agreements. (2010 Agreement, ¶ 1.a; 2011 Agreement, ¶ 1.a; a true and correct copy of the August 28, 2013 DDC Letter of Termination is attached as Exh. D)).

25.     DDC's last shipment of DDC Enabling Chips to Atlas Sound pursuant to the 2010 and 2011 Agreements was on June 19, 2013, and those DDC Enabling Chips would not have manufacture dates after that shipment date.

26.     Concerned that Atlas Sound was improperly using, or otherwise not protecting, DDC's proprietary and confidential information, since the termination of the 2010 and 2011 Agreements, including the DDC Embedded Technology, on April 30, 2014, DDC purchased several Atlas Sound branded IP speakers, and MiTek branded IP speakers, in the open market (the "Violating Speakers").

27.     Upon receiving and inspecting the Violating Speakers, DDC determined that Atlas Sound continues to improperly use DDC's proprietary and confidential information, including the DDC Embedded Technology, with the Violating Speakers.

28.     DDC also determined that the Violating Speakers are using counterfeit DDC Enabling Chips ("Counterfeit DDC Enabling Chips") to circumvent, unlock and decrypt the encryption DDC incorporated in the Firmware, FPGA Software, and Bootloader, so that the Firmware, FPGA Software, and/or Bootloader could be used in the Violating Speakers.

29.     Moreover, DDC determined that the Violating Speakers include the improper and unauthorized use of DDC's and/or AND's trademarks, including, but not limited "Digital Design Corp." and "Advanced Networks Designs," on circuit boards and/or circuits or software within the Violating Speakers, and within the FPGA Software, which is visible to installers, users and operators of the Violating Speakers a computer screen operably connected to the Violating Speakers.

30.     Moreover, DDC determined that MiTek branded Violating Speakers are using the same DDC Embedded Technology, same Counterfeit DDC Enabling Chips, and same DDC and/or AND trademarks, as the Atlas Sound branded Violating Speakers.

31.     MiTek never obtained a license from DDC to use any of the DDC Embedded Technology in any product, let alone the MiTek branded Violating Speakers, or use the DDC or AND trademarks, nor has Atlas Sound obtained permission from DDC to disclose any of DDC's proprietary or confidential information, including the DDC Embedded Technology, to MiTek.

**COUNT I (All Defendants)**
**CIRCUMVENTION OF COPYRIGHT PROTECTION SYSTEMS**

32.     DDC repeats and realleges the allegations set forth in Paragraphs 1 through 31, as if fully set forth herein.

33.     The Firmware, the Bootloader, and the FPGA Software are each a work protected under Title 17, 17 U.S.C. § 101, *et. seq*.

34.     By designing, copying, counterfeiting, manufacturing, and/or using, Counterfeit-DDC Enabling Chips in the Violating Speakers to decrypt, access and/or run DDC's proprietary and confidential Firmware, Bootloader and FPGA Software, Atlas Sound and MiTek have circumvented technological measures implemented by DDC that effectively controls access to DDC's protected Firmware, Bootloader and FPGA Software, in violation of 17 U.S.C. § 1201(a)(1)(A).

35.     By designing, copying, counterfeiting, manufacturing, having manufactured, selling, importing, and/or using Counterfeit DDC Enabling Chips to decrypt, access and/or run DDC's Firmware, Bootloader and FPGA Software, Atlas Sound has manufactured, imported, offered to the public, provided, or otherwise trafficked in, a technology, product, service, device, component, or a part thereof, that is primarily designed for the purpose of circumventing a technological measure that effectively controls access to DDC's Firmware, Bootloader and FPGA Software, in violation of 17 U.S.C. § 1201(a)(2).

36.     Atlas Sound's and MiTek's actions have caused, and continue to cause, damages to DDC, in an amount to be determined at trial.

37.     Atlas Sound's and MiTek's actions have caused, and continue to cause, irreparable injury to DDC, and unless and until Atlas Sound and MiTek are enjoined by this Court, DDC will continue to suffer irreparable injury because of Atlas Sound's and MiTek's actions.  DDC has no adequate remedy at law.

## COUNT II (All Defendants)
## UNFAIR COMPETITION UNDER THE LANHAM ACT

38.     DDC repeats and realleges the allegations set forth in Paragraphs 1 through 31, as if fully set forth herein.

39.     The terms "Digital Design Corp." and "Advanced Network Design" are trademarks owned and used by DDC and/or AND in connection with the sale and designation of their respective goods and services.

40.     Atlas Sound's and MiTek's unauthorized use of the "Digital Design Corp." and "Advanced Network Design" trademarks with the Violating Speakers is likely to cause confusion, mistake, or to deceive, as to the affiliation, connection, or association of DDC and/or AND with Atlas Sound and MiTek, or DDC's or AND's approval of the Violating Speakers.

41.     Atlas Sound's and MiTek's actions violates Section 1125 of the Lanham Act, 15 U.S.C. § 1125(a)

42.     Atlas Sound's and MiTek's actions have caused, and continue to cause, damages to DDC, in an amount to be determined at trial.

43.     Atlas Sound's and MiTek's actions have caused, and continue to cause, irreparable injury to DDC, and unless and until Atlas Sound and MiTek are enjoined by this Court, DDC will continue to suffer irreparable injury because of Atlas Sound's and MiTek's actions.  DDC has no adequate remedy at law.

## COUNT III (All Defendants)
## MISAPPROPRIATION OF TRADE SECRETS

44.     DDC repeats and realleges the allegations set forth in Paragraphs 1 through 43, as if fully set forth herein.

45.     DDC's confidential, proprietary and trade secret information include, but is not limited to, circuit board designs and layouts, Firmware, FPGA Software, bill of materials, board

Gerbers, Bootloader, and associated test applications and procedures, relating to IP speakers (collectively "DDC's Trade Secrets").

46.    DDC's Trade Secrets provide DDC and AND significant competitive advantages and economic benefits, and were created, designed and developed by DDC through many years of research and development and the expenditure of significant time, costs, and resources.

47.    Pursuant to the 2006, 2010 and 2011 Agreements, DDC disclosed, and provided to Atlas Sound a limited license to use, DDC's Trade Secrets.

48.    DDC protects its Trade Secrets by, among other safeguards: (a) requiring employees to keep confidential business and customer information confidential; (b) password protecting computers; (c) disabling employee passwords and access upon their termination; (d) limiting access to information; (e) marking documents confidential; (f) requiring employees to sign non-disclosure and non-compete agreements; (g) requiring the use of DDC's Enabling Chip in DDC's IP Speaker design in order to operate; and (h) requiring business partners and vendors to sign non-disclosure and non-competition agreements.

49.    By incorporating and using DDC's Trade Secrets, in the Violating Speakers after the termination of the 2006, 2010 and 2011 Agreements, Atlas Sound misappropriated and improperly used DDC's Trade Secrets in violation of 765 ILCS § 1065 *et. seq.*

50.     By disclosing DDC's Trade Secrets, to MiTek without DDC's authorization, Atlas Sound misappropriated and improperly used DDC's Trade Secrets in violation of 765 ILCS § 1065 et. seq.

51.    Atlas Sound's and MiTek's actions have caused, and continue to cause, damages to DDC, in an amount to be determined at trial.

52.     Atlas Sound's and MiTek's actions have caused, and continue to cause, irreparable injury to DDC, and unless and until Atlas Sound and MiTek are enjoined by this Court, DDC will continue to suffer irreparable injury because of Atlas Sound's and MiTek's actions.  DDC has no adequate remedy at law.

<u>**COUNT IV (Atlas Sound)**</u>
<u>**BREACH OF CONTRACT**</u>

53.     DDC repeats and realleges the allegations set forth in Paragraphs 1 through 31, as if fully set forth herein.

54.     DDC's confidential, proprietary and trade secret information include, but is not limited to, circuit board designs and layouts, Firmware, FPGA Software, bill of materials, board Gerbers, Bootloader, and associated test applications and procedures, relating to IP speakers (collectively "DDC's Trade Secrets").

55.     DDC's Trade Secrets provide DDC and AND significant competitive advantages and economic benefits, and were created, designed and developed by DDC through many years of research and development and the expenditure of significant time, costs, and resources.

56.     Pursuant to the 2006, 2010 and 2011 Agreements, DDC disclosed, and provided to Atlas Sound a limited license to use, DDC's Trade Secrets.

57.     Pursuant to the 2006, 2010 and 2011 Agreements, Atlas Sound agreed to not misuse, maintain the confidentiality of and to not disclose to others DDC's Trade Secrets.

58.     By incorporating and improperly using DDC's Trade Secrets to manufacture and sell the Violating Speakers after the termination of the 2006, 2010 and 2011 Agreements, Atlas Sound has breached the terms and conditions of each of the 2006, 2010 and 2011 Agreements.

59.     By disclosing to, and allowing, MiTek to use DDC's Trade Secrets to manufacture and sell Violating Speakers, Atlas Sound has breached its obligations of confidentiality under the 2006, 2010 and/or 2011 Agreements.

60.     By copying or reverse engineering, or allowing others to copying or reverse engineer, DDC Enabling Chips in order to manufacture and incorporate Counterfeit DDC Enabling Chips in the Violating Speakers, Atlas Sound has breached its obligations under the 2006, 2010, and/or 2011 Agreements.

61.     Atlas Sound's actions have caused, and continue to cause, damages to DDC, in an amount to be determined at trial.

62.     Atlas Sound's actions have caused, and continue to cause, irreparable injury to DDC, and unless and until Atlas Sound is enjoined by this Court, DDC will continue to suffer irreparable injury because of Atlas Sound's and actions.  DDC has no adequate remedy at law.

## COUNT V (All Defendants)
## COMMON LAW UNJUST ENRICHMENT (in the alternative)

63.     DDC repeats and realleges the allegations set forth in Paragraphs 1 through 62, as if fully set forth herein.

64.     Through the improper use of DDC's Trade Secrets, Atlas Sound and MiTek have unjustly retained benefits at the expense of DDC in the form of lost royalties, lost sales, and ill-gotten sales and profits.

65.     Allowing Atlas Sound and/or MiTek to retain such benefit gained from misusing DDC's proprietary and confidential information, including the DDC Embedded Technology, would violate the fundamental principles of justice, equity and good conscience.

66.     Atlas Sound's actions have caused, and continue to cause, damages to DDC, in an amount to be determined at trial.

67. Atlas Sound's actions have caused, and continue to cause, irreparable injury to DDC, and unless and until Atlas Sound is enjoined by this Court, DDC will continue to suffer irreparable injury because of Atlas Sound's and actions. DDC has no adequate remedy at law.

68. Plaintiffs request trial by jury for all issues triable by a jury.

## **PRAYER FOR RELIEF**

WHEREFORE, DDC and AND each prays that this Court enter an order and judgment in

its favor and against MiTek and Atlas Sound:

     a.     preliminarily and permanently enjoining each of Atlas Sound and MiTek, and each of their respective employees, agents, affiliates, subsidiaries, affiliates, officers, and anyone else acting in concert therewith, from circumventing any technological measure implemented by DDC or AND to control access to any of DDC's Embedded Technology;

     b.     preliminarily and permanently enjoining each of Atlas Sound and MiTek, and each of their respective employees, agents, affiliates, subsidiaries, affiliates, officers, and anyone else acting in concert therewith, from manufacturing, having manufactured, importing, offering to the public, providing, or otherwise trafficking in, any technology, product, service, device, component, or part thereof, that is designed or produced for the purpose of circumventing any technological measure implemented by DDC or AND to control access to any of DDC's Embedded Technology;

     c.     preliminarily and permanently enjoining each of Atlas Sound and MiTek, and each of their respective employees, agents, affiliates, subsidiaries, affiliates, officers, and anyone else acting in concert therewith, from using or disclosing to others any of DDC's Trade Secrets;

     d.     requiring each of Atlas Sound and MiTek, and each of their respective employees, agents, affiliates, subsidiaries, affiliates, officers, and anyone else acting in concert therewith, to immediately return to DDC any and all of DDC's Trade Secrets in its possession, custody or control;

     e.     preliminarily and permanently enjoining each of Atlas Sound and MiTek, and each of their respective employees, agents, affiliates, subsidiaries, affiliates, officers, and anyone else acting in concert therewith, from using any of DDC's or AND's trademarks;

     f.     requiring Atlas Sound and MiTek, jointly and severely, to pay to DDC and AND all damages by DDC and/or AND suffered as a result of the acts complained of herein;

     g.     requiring Atlas Sound and MiTek to immediately recall all Violating Products;

     h.     requiring Atlas Sound and MiTek, jointly and severely, to pay to DDC all profits that Atlas Sound and MiTek received from the sale of Violating Speakers;

     i.     requiring Atlas Sound and MiTek, jointly and severely, to pay to DDC and AND their attorneys' fees, costs and expenses, pursuant to 17 U.S.C. § 1203; and

     j.     awarding DDC and AND any other relief that this Court deems just and fit.

**DATED: May 20, 2014**

Respectfully submitted,

DIGITAL DESIGN CORPORATION and
ADVANCED NETWORK DEVICES, INC.


By:/s/ Vincent M. Smolczynski
      One of Their Attorneys

Joseph R. Lanser
Daniel Lanciloti
Josh A. Jubelirer
Vincent M. Smolczynski
SEYFARTH SHAW LLP
131 South Dearborn Street
Suite 2400
Chicago, Illinois 60603
Telephone:      (312) 460-5000
Facsimile:      (312) 460-7000

17277508v.2

## **VERIFICATION**

Pursuant to 28 USC § 1746, I declare and certify under penalty of perjury that the foregoing is true and correct.

_Brian J. Donahoe for Digital Design Corporation_
_and Advanced Network Devices, Inc._

Date 5/20/2014

17277508v.2

-16-